UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
ROGELIO KNIGHTS, JR.

                 Plaintiff,

    -against-

THE CITY UNIVERSIY OF NEW YORK,
THOMAS A. ISEKENEGBE, and
CHRISTOPHER TODD CAROZZA,

                 Defendants.
---------------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 24 2019 ★

BROOKLYN OFFICE

**COMPLAINT**
**DEMAND FOR JURY TRIAL**

CV 19 - 480

BLOCK, J.

LEVY, M.J.

## I. NATURE OF ACTION

In March 2017, Bronx Community College terminated Rogelio Knights, Jr. from his position as substitute Student Athletic Director on the basis of allegations that he had violated the college's sexual harassment policy. In a significant departure from its own internal policies and well established constitutional law, the institution preferred no formal charges against Mr. Knights and afforded him no pre-termination or post-termination hearing. Mr. Knights brings this action under 42 U.S.C. § 1983, charging that defendants deprived him of significant property and liberty interests without due process of law.

## II. JURISDICTION

1. Jurisdiction in this action is founded on 28 U.S,.C, §§ 1331 and 1341(3) and (4). Mr. Knights, in addition, invokes the supplemental jurisdiction of the court to hear and adjudicate claims arising under State law.

## III. THE PARTIES

2. Plaintiff Rogelio Knights, Jr. ("Mr. Knights") is a natural person and a citizen of the United States.

3. Defendant City of University of New York is a public benefit corporation, created under the laws of the State of New York.

4. Defendant Thomas A. Ikesenegbe ("Mr. Ikesenegbe") is a natural person. At all times mentioned herein he was employed as President of Bronx Community College and was acting under color of law.

5. Defendant Christopher Todd Carozzo ("Mr. Carozzo") is a natural person. At all times mentioned herein he was employed as Chief Diversity Officer and Title IX Coordinator of LaGuardia Community College and was acting under color of law.

## IV. STATEMENT OF CLAIMS

6. In or about September 2016, Bronx Community College hired Mr. Knights as a substitute Student Athletic Manager. Bronx Community College is part of the CUNY system.

7. Prior to working at Bronx Community College Mr. Knights worked for over two years at LaGuardia Community College in the position of Associate Director of Athletics and Recreation. LaGuardia Community College is part of the CUNY network.

**Disciplinary Procedures for Employees in the Higher Education Officer Series**

8. A CUNY employee working under the Student Athletic Manager title is classified as a Higher Education Officer and is represented by the Professional Staff Congress, a labor organization.

9. During the time relevant to this action there exists a collective bargaining agreement ("CBA") between CUNY and the Professional Staff Congress which covers the terms and conditions of employment, including disciplinary action.

10. The CBA provides that all employees in the Higher Education Officer series can only be discharged during the term of their term appointment for just cause.

11. On June 16, 2016, CUNY and the Professional Staff Congress executed a supplemental agreement referred to as Memorandum of Understanding For a Successor Collective Agreement ("Memorandum of Understanding"). The agreement extended most of the terms of the CBA and added new terms, some of which superseded those found in the CBA.

12. Section 21.8 of the Memorandum of Understanding specifically covers disciplinary proceedings against employees working in the Higher Education Officer series where immediate discharge is sought.

13. Section 21.8 provides that disciplinary proceedings seeking the immediate discharge of Higher Education Officer is initiated by the President of the College by serving a Notice of Intent for Immediate Discharge setting forth the charges against the employee and the proposed penalty of immediate discharge.

14. Section 21.8 provides that within three days after service of the written charges, the President or his designee is required to meet with the employee to discuss the basis of the charges and the proposed penalty.

15. The Memorandum of Understanding provides that within twenty-four hours after meeting with the employee, the President may withdraw the Notice of Intent for Immediate Discharge and instead issue a Notice of Intent to Prefer Charges that seek a lesser penalty than dismissal.

16. Section 21.8 of the Memorandum of Understanding states that if the President proceeds with the Notice of Intent for Immediate Discharge, the employee must be provided with copies of the documents relied upon in preparing the charges and a list of those documents being withheld on the ground of privilege.

17. Section 21.8 of the Memorandum of Understanding provides that within fourteen days after receipt of service of the Notice of Immediate discharge the employee may proceed to a disciplinary hearing before an impartial arbitrator.

**CUNY'S Sexual Harassment Policy**

18. CUNY has a written sexual harassment policy which is applicable to both students and staff which is referred to as the City University of New York Policy on Sexual Misconduct.

19. CUNY's sexual harassment policy provides that upon the filing of a complaint of sexual harassment against an employee by a student, the college's Title IX Coordinator is charged with conducting a fair and impartial fact finding investigation.

20. CUNY's sexual harassment policy provides that following the completion of the investigation the Title IX Coordinator is required to report his or her findings to the College President.

21. CUNY's sexual harassment policy provides that if Title IX investigative report substantiates any of the allegations of sexual misconduct against the employee the College President may either adopt or reject the findings.

22. CUNY's sexual harassment policy provides that if the College President adopts the findings of the Title IX Coordinator, he or she must then refer the matter for disciplinary action against the employee in accordance with applicable CUNY policies and rules and the collective bargaining agreement

**Accusation of Sexual Harassment**

23. On or about January 25, 2017, Bronx Community College Human Resources Director Shelly Levy notified Mr. Knights in writing that the college was placing him on administrative leave, pending the " outcome of a CUNY Title IX investigation by a separate institution."

4

24. On or about January 30, 2017, Mr. Knights received a letter from Christopher Todd Carozza, Chief Diversity Officer and Title IX Coordinator of LaGuardia Community College informing him that a LaGuardia College student, Briana Johnson, had submitted a complaint alleging that he had invited her to his office and then locked the door. Mr. Carozza reported that Ms. Johnson said that Mr. Knights then scrolled through her smart phone looking for nude pictures and told her that he would like to have sex with her and another student.

25. On February 23, 2017, Mr. Knights and his union delegate Zoraida Hernandez met at CUNY Central Office with Mr. Carozza and Bronx Community College Chief Diversity Officer Jesenia Minier-Delgado for an investigative interview concerning the allegations of sexual harassment.

26. At the investigative interview Mr. Knights specifically denied the allegations attributed to Ms. Johnson. He stated that he had never sexually harassed Ms. Johnson or otherwise behaved inappropriately toward her.

27. Mr. Knights told Mr. Carozzo at the investigative interview that the allegations attributed to Ms. Johnson probably originated with Ms. Johnson's basketball coach Anthony Alfaro. He explained that he had a history of discord with Mr. Alfaro dating back to the time he worked at LaGuardia Community College as Assistant Athletic Director.

28. Mr. Knights recounted at the interview that while he worked at LaGuardia Community College Mr. Alfaro had falsely reported to LaGuardia Community College's Athletic Director Brian Goldstein that Mr. Knights had sexually harassed another student athlete, Kristen Deer. Mr. Knights explained that no charges were brought against him because Ms. Deer as well as Assistant Basket ball coach Ferman Jones came forward and denied that any sexual harassment took place.

5

29. On March 16, 2017, Mr. Knights received an email from Mr. Carozza informing him that he had completed his investigation of the allegations of sexual harassment brought against him. Mr. Carozza stated in the email that his investigation had substantiated some of the allegations of sexual misconduct. He said that he found that Mr. Knights had requested nude photos from Ms. Johnson and told her that he wanted to have sex with her and another student. He said that he also found that Mr. Knights had told Ms. Johnson that she should "comeback to his office to make him smile" and that he had "leered" at her "in a sexual manner" while she was in the gymnasium.

**Carozzo Submits Biased and Fraudulent Report**

30. On or about March 15, 2017, Mr. Carozza submitted a memorandum to Dr. Gail O. Mellow, president of LaGuardia Community College containing his findings with respect to his investigation of the sexual harassment allegations against Mr. Knights.

31. In his memorandum to Dr. Mellow, Mr. Carozza states that his findings were based on interviews with Brianna Johnson, Ms. Johnson's father, Coach Anthony Alfaro, Coach Morris, and two students with whom Ms. Johnson allegedly discussed her allegations of sexual harassment. He reports that he also relied on a surveillance video which, he maintains, shows Mr. Knights "leering" at Ms. Johnson while she walked in front of him in the gymnasium on January 19, 2017.

32. In violation of Mr. Knights clearly established right to a fair and impartial investigation, Mr. Carozzo's acted in bad faith and submitted a report containing false and misleading information regarding his investigation.

33. In his report Mr. Carozza states that Anthony Alfaro told him during an investigative interview conducted on February 2, 2017 that Assistant Coach Ferman Jones once reported to

6

him that had had personally witnessed Mr. Knights sexually harassing LaGuardia College student Kristen Deer. Mr. Carozzo states in his report that he then tried to contact Ferman Jones to corroborate whether or not Mr. Jones had actually seen Mr. Knights sexually harass Ms. Deer. He falsely states in his report that he was unable to contact Mr. Jones.

34. After Mr. Caroozza issued his investigative report Ferman Jones came forward and submitted a written statement to the effect he had in fact spoken to Mr. Carozza by telephone during his investigation and told him that he never witnessed Mr. Knights harass Ms. Deer and that the allegation of sexual harassment concerning Kirsten Deer had been entirely fabricated by Coach Anthony Alfaro.

35. In further violation of Mr. Knights' clearly established right to a fair and impartial fact finding investigation, Mr. Carozza also submitted false and misleading information regarding his interview with Kristen Deer.

36. In his investigative report Mr. Carozza states that he interviewed Kristen Deer to confirm whether or not Mr. Knights had ever sexually harassed her while he worked at LaGuardia Community College. The interview was recorded by Ms. Deer.

37. Although, Mr. Carozza accurately states in his investigative report that Ms. Deer denied that Mr. Knights had ever sexually harassed her, he failed to report that she also told him during the interview that the allegation of sexual harassment was completely fabricated by Coach Anthony Alfaro in an effort to damage Mr. Knights' career.

38. In violation of Mr. Knights' right to a fair and impartial investigation, Mr. Carozza engaged in further misconduct and demonstrated bad faith by falsely telling Ms. Deer in the course of the interview that he was investigating allegations that Mr. Knights had inappropriately

watched female student-athletes while they were receiving a massage. Mr. Carozza had no factual basis for making such a statement.

39. By letter dated March 17, 2017, Shelly B. Levy Bronx Community Human Resources Director, informed Mr. Knights that the College had adopted the findings of Mr. Carozza's Title IX report and advised him that his employment was being terminated immediately.

40. In violation of Mr. Knights clearly established rights, defendant Isekenegbe failed to serve Mr. Knights with a Notice of Intent for Immediate Discharge setting forth the charges against him and the proposed penalty, in accordance with Section 21.8 of the Memorandum of Understanding.

41. In further violation of Mr. Knights rights, prior to his termination CUNY and defendant Isekenegbe failed to provide him with copies of documents the college relied on in preparing charges or making its determination to seek his immediate discharge.

42. In terminating Mr. Knights' employment in violation of his clearly established rights, defendants CUNY and Isekenegbe failed to provide him with an opportunity to appear at a disciplinary hearing before an impartial arbitrator, as provided in Section 21.8 (e) of the Memorandum of Understanding.

43. At the time of his termination Mr. Knights was one of three finalists for permanent appointment to the position of Student Athletics Manager at Bronx Community College, and he was scheduled for an interview for the position with Irene Delgado, Vice President of Student Success.

44. On April 4, 2017, the Professional Staff Congress filed a Step 1 grievance on Mr. Knights' behalf, charging that he was terminated without just cause.

45. On or about July 10, 2017, Mr. Knights filed an Article 78 proceeding in the Supreme Court of the State of New York, County of New York, seeking a declaration that his termination was arbitrary and capricious and in violation of his due process rights.

46. In July 2017, the allegations of sexual harassment against Mr. Knight was disseminated by The New York Daily News and The New York Post, causing him to suffer public ridicule, humiliation, and racial abuse on internet message boards.

47. On or about July 17, 2017, Anthony Alfaro told a New Daily News journalist that Mr. Knights had also engaged inappropriate behavior with female athletes while employed at LaGaurdia Community College. This allegation is false, and its publication in the New York Daily News caused Mr. Knights additional mental suffering and damage to his reputation.

48. On or about August 17, 2017, Mr. Knights was informed in writing by New York City Department of Education's Office Personnel Investigation in response to a job application that because he was discharged from Bronx Community College based on allegations of sexual misconduct he was not eligible for a security clearance, and therefore could not be employed by the City of New York Department of Education.

49. On May 3, 2018, more than a year after his termination, Bronx Community College Human Resources Director Elizabeth River informed Mr. Knights by letter that the college had "rescinded" its July 17, 2017 decision to terminate his employment as Student Athletic Manager.

50. On June 4, 2018, on the basis of a motion filed by CUNY, the Honorable Arlene P. Bluth of Supreme Court, New York County issued an order dismissing the Article 78 proceeding challenging Mr. Knights' termination. The court ruled that since CUNY's counsel had represented to the court at oral argument that the issues raised in the petition would be addressed

in a pending disciplinary arbitration proceeding between the parties, Mr. Knights had not exhausted his administrative remedies.

51. On or about August 2, 2018, CUNY moved to dismiss the arbitration proceeding arguing that since it had rescinded Mr. Knights termination in May 2018, his case was no longer arbitrable.

52. On November 7, 2018, Arbitrator Deborah M. Gaines of the American Arbitration Association issued an opinion and award granting defendant CUNY's motion to dismiss the arbitration proceeding on the ground that the matter was no longer arbitrable because CUNY had rescinded its decision to terminate Mr. Knights' employment.

53. In her opinion and award, Arbitrator Gaines erroneously stated that because Mr. Knights did not hold a civil service appointment to his position as Student Athletic Director at Bronx Community College he had no "property interest" in his job and he was not "entitled to a fact finding hearing to clear his name."

54. To date, Mr. Knights has not been afforded a hearing where he would have an opportunity to respond to the allegations of sexual misconduct and clear his name.

## VI. PLAINTIFF'S FIRST CLAIM FOR RELIEF

55. The matters set forth in paragraphs 1 through 54 are hereby repeated.

56. Insofar as the CBA and the Memorandum of Understanding provides that Higher Education Officers can only dismissed during their term of appointment for just cause, Mr. Knights had a constitutionally protected property interest in continued employment until the natural completion of his term of appointment.

57. In summarily terminating Mr. Knights' employment before the completion of his term of appointment, CUNY violated his right to procedural due process before deprivation of property, as guaranteed by the Fourteenth Amendment to the United States Constitution.

58. By failing to afford Mr. Knights with a disciplinary hearing where he would be have an opportunity to clear his name from the stigmatizing allegation of sexual misconduct, defendants have violated his right not to be deprived of liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution.

59. As a consequence of defendants' wrongful conduct, Plaintiff has suffered mental, anguish, loss of enjoyment of life, irreparable damage to his reputation, and other non-pecuniary losses in the amount to $3,000,000.00

60. As a consequence of defendants' unlawful conduct, Plaintiff has suffered economic harm including loss of wages and future prospects for income, in an amount to be proved at trial.

61. Insofar as defendants Isekenegbe's and Carozza's conduct as described above was wanton, reckless and in total disregard for Mr. Knights' well established rights, he is entitled to punitive damages against them in the amount of $10,000,000.00.

62. Prior to commencing this action, Plaintiff exhausted all post-deprivation administrative remedies, including initiating an arbitration proceeding and commencing an Article 78 proceeding.

VII. PLAINTIFF'S SECOND CLAIM FOR RELIEF

63. The matters set forth in paragraphs 1 through 54 are hereby repeated.

64. In her decision and award granting CUNY's motion to dismiss the arbitration proceeding on the ground of mootness the arbitrator erroneously ruled, *inter alia,* that Plaintiff is not entitled to a name-clearing hearing in connection with his termination because he did not hold a civil service appointment to his position..

65. The arbitrator's ruling that Plaintiff's was not entitled to a name-clearing hearing because he did not hold a civil service appointment to his position clearly exceeded her power as an arbitrator and was contrary to law.

66. Accordingly, plaintiff is entitled to judgment in accordance with New York Civil Practice Law and Rules § 7511 vacating and/ or modifying that portion of the Arbitrator's opinion and award to extent that it determined Plaintiff's right to a name-clearing hearing.

## VIII. JURY DEMAND

67. Plaintiff demands that all issues in this action be tried before a jury.

WHEREFORE, Plaintiff demands judgment providing the following relief:

a) judgment against all defendants jointly and severally on Plaintiff's First Claim for relief in the amount of $3,000,000.00, representing compensation for emotional injury, mental anguish and damage to his reputation;

b) judgment against all defendants jointly and severally for pecuniary injury including back pay and loss of future earnings in an amount to be determined at trial, along with reasonable attorney fees;

c) judgment against defendants Isekenegbe and Carozzo, jointly and severally, on Plaintiffs' First Claim for Relief for punitive damages in the amount of $10,000,000.00;

12

d) equitable relief directing the expungement of the Title IX report and directing that Plaintiff be afforded a post-termination name clearing hearing;

e) judgment on Plaintiff's Second Claim for relief vacating and/or modifying the arbitration decision and award to the extent that it purports determine Plaintiff's right to a name-clearing hearing;

f) costs and disbursement and such other further relief the court deems just and proper.

Dated: Brooklyn, New York
January 19, 2019

ROOSEVELT SEYMOUR
*Attorney for Plaintiff*
300 Cadman Plaza West, 12th Floor
Brooklyn, New York 11201
(718) 802-0055
Bar Code: RT0915