UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROGELIO KNIGHTS, JR., <br><br> Plaintiff, <br><br> -against- <br><br> THE CITY UNIVERSITY OF NEW YORK, THOMAS A. ISEKENEGBE, and CHRISTOPHER TODD CAROZZA, <br><br> Defendants. | **<u>MEMORANDUM AND ORDER</u>** <br><br> Case No. 19-CV-480 (FB) (RML) |

*Appearances*:
*For the Plaintiff*:
ROOSEVELT SEYMOUR
147 Prince Street, Room 203
Brooklyn, New York 11201

*For Defendant*:
EUGENIA FOWLKES
Corporation Counsel for the
  City of New York
100 Church Street, Room 2-140
New York, NY 10007

**BLOCK, Senior District Judge:**

Plaintiff Rogelio Knights, Jr. ("Knights") commenced this action against the City University of New York ("CUNY"), Christopher Carozza ("Carozza"), and Thomas Isekenegbe ("Isekenegbe") (collectively "Defendants") after he was fired from his job at Bronx Community College ("BCC"). Knights sues Defendants under 42 U.S.C. § 1983 for depriving him of property and liberty without due process as guaranteed by the Fourteenth Amendment. He also challenges a related arbitration decision under N.Y. C.P.L.R. § 7511. This Court previously rejected Defendants' motion to dismiss for failure to state a claim under Federal Rule of

1

Civil Procedure 12(b)(6). *See Knights v. City Univ. of New York*, No.
119CV480FBRML, 2020 WL 1676484 (E.D.N.Y. Apr. 6, 2020).

Presently before the Court is Defendants' motion for summary judgment on
each of Knights's claims under Federal Rule of Civil Procedure 56, as well as
Knights's cross motion for partial summary judgment on his claim for deprivation
of property without due process. For the reasons discussed below, Defendants'
motion is granted in part and denied in part and Knights's motion is denied.

## I.

The following facts are taken from the pleadings, the parties' Rule 56.1
statements, and supporting documents. They are undisputed unless otherwise
noted.

Knights was hired by Bronx Community College ("BCC"), a CUNY
community college, in September 2016 as a substitute student athletic manager.
Knights's appointment was temporary, set to last until March 6, 2017. In
January 2017, Carozza, the Title IX coordinator of LaGuardia Community College
("LGCC"), another CUNY school, notified Knights that a student had accused him
of sexual harassment and that Carozza would investigate the allegations. Knights
was placed on paid administrative leave pending the outcome of the investigation.
Knights was interviewed by Carozza on February 23, 2017, alongside his union
representative and BCC's Title IX Coordinator, during which Knights was asked

2

about the allegations and evidence against him. Because Knights's employment term was set to end on March 5, 2017, BCC extended it to April 5 so as to allow the Title IX investigation to conclude.

 On March 15, 2017, Carozza filed a report finding most of the allegations substantiated, which BCC adopted. Substantiated claims included that Knights had told a student he would like to have sex with her, leered at her, instructed her to "comeback to his office to make him smile," and searched their cell phone for nude photographs. Compl. at ¶ 31.

Knights was terminated without further process on March 17, 2017, less than three weeks before his extended employment term was set to expire. Knights's collective bargaining agreement ("CBA") and its supplement provided that all Higher Education Officers, of which Knights was one, could only be terminated for just cause and mandated that they be given an opportunity to be heard before being subject to immediate discharge, among other procedures. Defendants do not contest that Knights's firing did not comport with CBA-mandated process.

In July 2017, Anthony Alfaro ("Alfaro"), a basketball coach at LaGuardia Community College, made a statement to the New York Daily News relating a previous allegation against Knights concerning inappropriate behavior with a separate student athlete.

Knights proceeded to lodge multiple challenges to his termination. His union filed a grievance on his behalf on April 4, 2017, alleging that BCC violated the CBA by firing him without requisite process. Knights then filed an additional grievance pursuant to the CBA with CUNY's chancellor, for which he participated in a meeting on July 17, 2017. On May 3, 2018, after Knights's grievances proceeded to arbitration but before the arbitrator rendered a verdict, BCC informed Knights that his termination was being rescinded and that he would be paid for the 13 workdays that remained in his appointment when he was fired. After a hearing, the arbitrator dismissed Knights's petition as moot because his termination had been rescinded and he had been paid for the rest of his appointment.

Knights had also filed an Article 78 proceeding challenging his termination in New York Supreme Court on July 10, 2017, which was dismissed in 2018 for failure to exhaust administrative remedies because he was still involved in arbitration with CUNY. The decision dismissing his Article 78 challenge noted that Knights could file a new one after his arbitration had concluded.

The parties disagree as to whether the Title IX report was removed from Knights's personnel file at BCC upon the recission of his termination in 2018. Upon applying to other education jobs in 2017, Knights was told he was ineligible for employment with the New York City Department of Education because of his termination from BCC. He applied again after BCC's  recission of his termination

4

and was again rejected on the basis of his discharge from BCC for sexual misconduct.

## II.

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if evidence in the pleadings, discovery materials, and affidavits "is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under governing law." *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 16 (2d Cir. 2021) (quoting *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020)). All ambiguities and factual inferences are resolved "in favor of the party against whom summary judgment is sought." *Id.* "Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue for trial, and cannot rely merely on allegations or denials contained in the pleadings." *Pik Quan Leong v. 127 Glen Head Inc.*, 102 F. Supp. 3d 450, 453 (E.D.N.Y. 2015); Fed. R. Civ. P. § 56(c).

Procedural due process claims under § 1983 for the termination of public employment involve a two-step inquiry: (1) whether the employee possessed a liberty or property interest associated with their employment and, if so, (2) what

process they were entitled to before being deprived of it. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).[1]

## A. Deprivation of Property

"A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge." *Ciambriello*, 292 F.3d at 313; *see also Faghri v. Uni. Of Conn.*, 621 F.3d 92, 99 (2d Cir. 2010). Here, the parties agree that Knights's CBA vested him with a property interest in continued employment at least until the end of his appointment period. The question is therefore what process Knights was due before being fired and whether due process was satisfied by pre- or post-termination process he was afforded. The process owed to Knights turns on the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

---

[1] Unlike the "senior colleges" of the CUNY system, community colleges such as BCC are not subject to sovereign immunity under the Eleventh Amendment. *See Gengo v. City Univ. of New York*, No. 07-CV-681 KAM JMA, 2011 WL 1204716, at *3 (E.D.N.Y. Mar. 29, 2011), aff'd, 479 F. App'x 382 (2d Cir. 2012) ("While no Second Circuit precedent directly addresses this question, the Court has noted in dicta that community colleges may not qualify for sovereign immunity because under state law it appears that the City may be responsible for paying any judgments rendered against the CUNY community colleges."); *cf. Clissuras v. City Univ. of New York*, 359 F.3d 79 (2d Cir. 2004) (explaining that CUNY senior colleges receive sovereign immunity because of their funding and oversight by New York State, in likely contrast to CUNY community colleges).

administrative burdens that the additional or substitute procedural requirement would entail.

*Ciambriello*, 292 F.3d at 319-20 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

### 1. Pre-Deprivation Process

"Although due process guarantees notice and a hearing prior to the termination of a tenured public employee, the requisite hearing is a minimal one." *Locurto v. Safir*, 264 F.3d 154, 173 (2d Cir. 2001); *see Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997) ("[A] public employee dismissible only for cause [i]s entitled to a very limited hearing prior to his termination."). Adequate pre-termination hearings need not "purport to resolve the propriety of the discharge," or provide "more than notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to respond." *Locurto*, 264 F.3d at 174. Requiring more "would impede the government's interest in quickly removing from service an unsatisfactory employee." *Id.*

The pre-termination process due is even less substantial in the context of a deprivation that affects a relatively insignificant private intertest, such as when a deprivation is "de minimus." *Squicciarini v. Vill. of Amityville*, No. 17-CV-6768, 2019 WL 1232093, at *7 (E.D.N.Y. Mar. 15, 2019). In *Squicciarini*, the court dismissed a § 1983 claim where the plaintiff firefighter, who had been suspended from particular duties for less than four days, had been "informed of the basis for

his suspension" and "was able to present his point of view regarding the suspension" in an "informal" meeting, resulting in his reinstatement.

The deprivation of property suffered by Knights—termination 13 workdays days before the end of his appointment was set to end—clearly exceeds the temporary suspension suffered by the *Squicciarini* plaintiff. But it is not substantially more than a de minimus deprivation, especially considering that Knights was only still employed because CUNY needed time to finish its Title IX investigation of him—Knights's term was initially set to end on March 6, 2017.

Knights also had no further property interest in continued employment outside of being able to finish his extended substitute appointment. Knights suggests that his potential to be hired as a permanent student athletics manager constituted an additional interest in continued employment. He was one of three finalists for the position and had an interview scheduled for it at the time of his termination. But a "mere subjective expectancy" of re-employment is not protected by procedural due process; Knights must show he was entitled to it under "the policies and practices of the institution." *Perry v. Sindermann*, 408 U.S. 593, 603 (1972) (cleaned up). But being one of three finalists for a position barely amounts to an "expectancy," let alone an entitlement. *Id.* Knights also has no claim for deprivation of property based on his placement on paid suspension during the Title IX investigation. "As several courts in this Circuit have recognized, an employee

8

who continues to be paid . . . cannot sustain a claim for deprivation of property without due process even if relieved from job duties." *Ingber v. New York City Dep't of Educ.*, No. 14-CV-3942 JMF, 2014 WL 6888777, at *2 (S.D.N.Y. Dec. 8, 2014) (quoting *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 453 (S.D.N.Y. 2010)) (cleaned up).

The pre-termination process afforded to Knights is sufficient given his relatively minor private interest. Knights had notice, an explanation of CUNY's evidence, and an opportunity to respond to it. *Locurto*, 264 F.3d at 174. Knights was given notice on January 25, 2017 that a Title IX investigation was pending against him. That same day, he met with BCC personnel and received a letter with this information and a no-contact order listing the name of the complaining student. He was given the details of the Title IX complaint on January 30.

During his February 23, 2017 interview, Knights was shown evidence against him and given an opportunity to offer an explanation, which he did. Specifically, Knights was asked to recount his interactions with the complaining student and was given opportunities to deny allegations that he asked to see the student's nude photos, asked if the student had sexual relations with another student, told her he would "fuck" her, asked her "to make him happy . . . by showing him nude photos," and leered at her. Knights was shown surveillance footage of himself appearing to stare at the student and asked to explain what was

happening in the footage. Knights was also allowed to opine that the investigation was a conspiracy orchestrated by CUNY personnel who held personal animus against him. Dkt. No. 52, Ex. O at 9. This was more than the minimum process owed to him given his relatively minor private interest and the large interest CUNY had in quickly acting on personnel decisions that could affect the safety and well-being of their students.

### 2. Post-Deprivation Process

"CBA-mandated grievance procedures are routinely (though not always) held to provide adequate post-deprivation process." *O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005). Here, Knights pursued multiple post-deprivation remedies provided for in his CBA. He initiated the CBA-provided grievance process, leading to arbitration. That the resulting arbitration hearing centered on whether his grievance was moot does not show that the process was inadequate, but instead highlights the minimal nature of Knights's deprivation in the first place.

Knights also had the opportunity to file an Article 78 proceeding after his arbitration; Article 78 proceedings are considered "a wholly adequate post-deprivation hearing for due process purposes" for New York state employees. *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001). Knights argues that this was inadequate because his first Article 78 proceeding was dismissed for lack of exhaustion and a second would have time barred. But it is the fact of the

proceeding's availability, not whether a plaintiff took advantage of it, which is operate for due process claims. *See Capul v. City of New York*, No. 19 CIV. 4313 (KPF), 2020 WL 2748274, at *13 (S.D.N.Y. May 27, 2020) ("[Plaintiffs'] failure to avail themselves of such post-deprivation procedure does not render their due process claims viable"), *aff'd*, 832 F. App'x 766 (2d Cir. 2021). Between the pre- and post-deprivation procedures available to him, Knights was therefore provided with adequate process given his relatively minor private interest.

**B. Deprivation of Liberty**

Knights alleges he was deprived of a liberty interest because he was not afforded a name clearing hearing before his termination. He bases his liberty claim against CUNY and Isekenegbe on his firing and stigmatizing statements made by CUNY personnel to the news media. He also alleges deprivation of liberty by Carozza on the basis of his Title IX report, which Knights alleges omitted exculpatory evidence and included false statements. Knights claims he suffered lost wages and diminished future job prospects as a result.

A plaintiff is entitled to a name-clearing hearing under procedural due process if they make out a "stigma-plus" claim alleging "[l]oss of one's reputation . . . coupled with the deprivation of a more tangible interest, such as government employment." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572-73

11

(1972)). Such a "stigma plus" claim may arise "when an alleged government defamation occurs in the course of dismissal from government employment." *Id.* A successful claim must show "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (quoting *Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir. 2004)) (cleaned up). For stigmatizing statements to create a material burden or alteration of a plaintiff's status, it must be "disseminated widely enough to damage the discharged employee's standing in the community and foreclose future job opportunities." *Brandt v. Board of Education*, 820 F. 2d 41, 45 (2d Cir. 1987).

### 1. As Against Carozza

Knights's claim against Corozza fails because Carozza's allegedly false statements and omissions are insufficiently derogatory. To the extent the Title IX report was disseminated and injured Knights's reputation and future job prospects, Carozza's allegedly false statements were not the ones that packed any reputational punch. First, Knights contends that Carozza omitted from the report a statement by Kristen Deer, a former student, that Alfaro disliked Knights and had previously wrongly accused Knights of sexually harassing Deer. But Knights's non-harassment of Deer is explicitly addressed by Deer in the report, which explains

12

that Deer "felt that [Knights] never acted inappropriately towards her," and that

"no other student-athlete complained to her about Mr. Knights's behavior." Dkt.

No. 52, Ex. O at 7.

Knights also alleges that Carozza told Deer he was investigating allegations

that Knights watched a female student receiving a massage. But this was not

included in the Title IX report, and Knights provides no alternate theory of how

this statement was disseminated sufficiently to harm his reputation or job

prospects. *See Brandt*, 820 F.2d at 45. Finally, Carozza's statement concerning his

inability to contact assistant basketball coach Sherman Jones was included in the

Title IX report, but could not plausibly constitute a stigmatizing statement in itself,

even if it was disseminated to others. Knights therefore fails to make out a "stigma-

plus" claim against Carozza.

### 2. As Against Isekenegbe

Knights fails to detail Isekenegbe's personal role in making or disseminating

stigmatizing statements about him such that he could be individually liable for any

deprivation of liberty. As president of BCC, Isekenegbe was involved in the

decision to fire Knights, but Knights declines to provide any further detail about

his personal involvement in harming Knights's reputation. Defendant's motion for

summary judgment is therefore granted as to Knights's liberty claim against

Isekenegbe.

### 3. As Against CUNY

To support his liberty claim against CUNY, Knights cites Alfaro's statement to the New York Daily News about Knights's previous sexual harassment allegations. He also claims that the Title IX report was false, and that CUNY's adoption and retention of the report in his personnel file constituted dissemination that prevented him from finding another teaching job in New York City. If Knights can show that Alfaro's statements and statements included in the Title IX report were false and caused him tangible injury, he may have a "stigma-plus" claim against CUNY for deprivation of liberty, as false statements about sexual harassment allegations can do significant damage to an educator's reputation. Alfaro's statements to a news journalist, if true, also clearly meet the requirement for dissemination.

Whether or not the Title IX report meets the dissemination requirement should also be left to a jury. CUNY claims the Title IX report was removed from Knights's file in 2018. However, either the report or other documents indicating the reason for Knights's termination could have been present in his file long enough to disqualify him from work in his chosen field—a letter Knights received from the Department of Education cited his dismissal from BCC as the reason for his rejection and disqualification from employment. *See Brandt*, 820 F.2d at 45 (holding that the dissemination requirement can be "satisfied where the

14

stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers"). The dissemination requirement can be satisfied even if Knights himself was the one to disclose the report or its contents to prospective employers upon their request. *See Id.* at 45.

A reasonable jury could find CUNY liable for deprivation of liberty under the "stigma-plus" theory. However, as a municipal entity, CUNY can only be held liable if CUNY acted pursuant to an official municipal policy under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). It is to this inquiry that the Court now turns.

Knights argues that Isekenegbe's final authority over personnel decisions means he acted as a policy maker sufficient to establish *Monell* liability when CUNY fired Knights without a name-clearing hearing. Municipalities are not subject to § 1983 liability under respondeat superior for their employees' constitutional violations. *Monell*, 436 U.S. at 663 n.7. However, *Monell* liability arises under § 1983 when a city official acts pursuant to a municipal policy. "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Simms v. City of New York*, 480 F. App'x 627, 629 (2d Cir. 2012) (quoting

15

*Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Ordinarily, "a single incident alleged in a complaint . . . does not suffice to show a municipal policy." *Dean v. New York City Transit Auth.*, 297 F. Supp. 2d 549, 555 (E.D.N.Y. 2004) (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)). However, a decision made by "an official [who] has final authority over significant matters involving the exercise of discretion" can "represent government policy" sufficient to establish *Monell* liability. *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) (quoting *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983)). This is because when a high-ranking municipal official acts pursuant to discretion given to them by the local government, it can be said that the municipal policy granting them that discretion "caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 40 (2d Cir. 2008). "An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Anthony*, 339 F.3d at 139 (quoting *Rookard*, 710 F.3d at 45).

The Second Circuit has previously held that an executive director of a city hospital and the president of corporate affairs of its parent company were "final decision-makers" because of their final "authority over personnel decisions." *Id.* (citing *Rookard*, 710 F.3d at 45). It held the same for an elected sheriff in charge of

16

personnel at a county jail, *id.* (citing *Jeffes v. Barnes*, 208 F.3d 49, 60-61 (2d Cir. 2000)), as well as mayors making personnel decisions, *Patterson v. Utica,* 370 F.3d 322, 330-31 (2d Cir. 2004), *Gronowski v. Spencer,* 424 F.3d 285, 296-97 (2d Cir. 2005).

Knights alleges that Isekenegbe had final authority over personnel decisions and the hearings involved therein as president of BCC, and that he fired Knights, facts that Defendants concede. Isekenegbe exercised final authority as the highest-ranking administrator at his institution analogous to the officials in *Anthony*, *Rookard*, *Jeffes*, and *Gronowski*. Thus, a jury could reasonably find that his firing of Knights constituted an official policy or custom that denied Knights liberty without due process. Although, as explained above, Isekenegbe is not personally liable for depriving Knight of liberty, he nonetheless exercised final authority in firing him, which may give rise to *Monell* liability on the part of CUNY. This opens the door to considering conduct by Isekenegbe's subordinates in assessing Knights's liberty claim against CUNY. Defendants' motion for summary judgment is therefore denied with respect to Knights's liberty claim against CUNY.

**D. Section 7511 Claim**

Knights requests vacatur of the arbitration decision on the grounds that the arbitrator exceeded her power in ruling that he was not entitled to a name-clearing hearing because he did not hold a civil service position. CPLR § 7511(b)(1)(iii)

allows vacatur when an arbitrator "exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made," resulting in prejudice to a party. N.Y. C.P.L.R. § 7511(b)(1)(iii). Relief under this provision is only granted if an arbitrator "violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power." *In re Kowaleski (New York State Dep't of Corr. Servs.)*, 16 N.Y.3d 85, 90 (2010) (quoting *Matter of New York City Tr. Auth. v. Transport Workers' Union of Am., Local 100, AFL–CIO,* 6 N.Y.3d 332, 336 (2005)).

Knights argues that the arbitrator's finding was irrational and violates public policy guaranteeing name-clearing hearings to public employees who have been stigmatized. The arbitrator did not reject the existence of this entitlement but denied it to Knights because of the type of public position he held. Knights also does not show that such a guarantee is considered a strong public policy in New York justifying the vacatur of an arbitration award. Instead, his claim amounts to a suggestion that the arbitrator's decision was incorrect, which is insufficient for the purposes of § 7511(b)(1)(iii). Summary judgment in favor of Defendants on Knights's § 7511 claim is therefore warranted.

### III.

For the foregoing reasons, Defendants' motion for summary judgment is granted as to Knights's deprivation of property claims, his deprivation of liberty

claims against Carozza and Isekenegbe, and his CPLR § 7511 claim, and denied as to his deprivation of liberty claim against CUNY. Knights's cross-motion for summary judgment is denied.

      **SO ORDERED.**

                          _/S/ Frederic Block_____
                          FREDERIC BLOCK
                          Senior United States District Judge

Brooklyn, New York
November 8, 2022