UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROGELIO KNIGHTS, JR.<br><br>    Plaintiff,<br><br>-against-<br><br>THE CITY UNIVERSITY OF NEW YORK, THOMAS A. ISEKENEGBE, and CHRISTOPHER TODD CAROZZA,<br><br>    Defendants. | **MEMORANDUM AND ORDER**<br><br>Case No. 1: 19-CV-480 (FB) (RML) |

*Appearances:*
*For the Plaintiff*:
ROOSEVELT SEYMOUR
147 Prince Street, Room 203
Brooklyn, NY 11201

*For the Defendants*:
SYLVIA O. HINDS-RADIX
CHRISTOPHER ARKO
Corporation Counsel for the
City of New York
100 Church Street, Room 2-140
New York, NY 10007

**BLOCK, Senior District Judge:**

  The Plaintiff, Rogelio Knights, Jr. ("Knights"), brought this civil rights action against the City University of New York ("CUNY") under 42 U.S.C. § 1983, for wrongfully terminating his employment as a substitute Student Athletics Manager. After a jury trial before the Court, the jury rendered a verdict finding that he was not wrongfully terminated and, hence, not entitled to monetary damages. It also determined, however, that he was not afforded a name-clearing hearing before

1

his termination. Pursuant to the Court's instruction, as required by *Carey v. Piphus*, 435 U.S. 247 (1978), the jury awarded him nominal damages of $1 for this due process constitutional violation because "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions." *Id.* at 266. He now seeks $119,700 for his attorney's fees.

The Court is mindful of the Supreme Court's holding in *Farrar v. Hobby*, 506 U.S. 103 (1992), that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief . . . the only reasonable fee is usually no fee at all." *Id.* at 115. The Court is also mindful of the Second Circuit's interpretation of *Farrar* in *Pino v. Locasio*, 101 F.3d 235 (2d Cir. 1996), where it held that "while there is no *per se* rule that a plaintiff recovering nominal damages can never get a fee award, *Farrar* indicates that the award of fees in such a case will be rare." *Id.* at 238.

Notably, in *Pino*, the Court cabined those rare circumstances justifying a fee award to those cases where a tangible result was achieved by the litigation that "confers a benefit to society" *id.*, such as the creation of "a new rule of liability that served a significant public purpose." *Id.* at 239 (citation omitted). It held in that case, however, that "[w]hile there may be situations where such an award is appropriate, the present record does not support an exception." *Id.*; *see also McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 252 (2d Cir. 2004) (describing the

2

"public-interest exception" as applying to cases announcing "ground-breaking conclusions of law"); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) (citing *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)) (fee award justified where litigation "resulted in the granting of significant injunctive relief").

Summarizing this caselaw, one district court in the Circuit recently stated, "[a]n award of attorney's fees where only nominal damages are awarded is thus appropriate only when there are other significant non-monetary indicia of success." *Rothman v. City of New York*, No. 19 CIV. 225 (CM), 2020 WL 7022502, at *3 (S.D.N.Y. Nov. 30, 2020).

The Court recognizes that this case does not fall within any of the exceptions articulated in the "rare" handful of post-*Farrar* cases warranting the award of counsel fees but believes that under the case's unusual circumstances, the Plaintiff is entitled to a significant part of his attorney's fees.

**I**

Prior to the trial, the Court had issued a decision denying CUNY's motion for summary judgment. *Knights v. CUNY*, 639 F. Supp. 3d 395 (E.D.N.Y. 2022). Its recitation of the facts was taken in the main from CUNY's memorandum of law in support of its motion. In it, CUNY explained that it "declined to renew Plaintiff's substitute appointment as an athletic manager at Bronx Community College ("BCC") because of "substantiated allegations" that Plaintiff "had sexually

harassed a student." Def. Mem. of Law at 1.

The student was an adult basketball player for the LaGuardia Community College's ("LaGCC") woman's basketball team. She claimed that on January 19, 2017, "she went with Plaintiff to his office under the impression they would be discussing her academic future and career resources" *id.*, but while there, "Plaintiff asked her if there were any nude photos on her phones, whether she was sexually involved with another member of the basketball team, and stat[ed] that he would like to be sexually involved with her and that other female student." *Id.* at 2.

Consequently, Christopher Carozza ("Carozza"), the Title IX Coordinator/Chief Diversity Officer for LaGCC, began an investigation after the student filed a Title IX sexual misconduct complaint four days later. Pending completion of the investigation, on January 25, 2017, Knights was "placed on paid administrative leave." Since "Plaintiff's substitute appointment was set to end on March 5, 2017, BCC extended Plaintiff's appointment for thirty (30) days, from March 6, 2017, to April 5, 2017, in order to complete the Title IX investigation." *Id.* at 2-3.

Carozza "compiled his findings in a confidential memorandum dated March 15, 2017." *Id.* at 3. BCC adopted them "into its own Title IX investigation," *id.*, and notified Plaintiff by letter dated March 17, 2017, that Plaintiff's substitute appointment as Student Athletics Manager was terminated on that date.

Shortly thereafter, on April 4, 2017, Plaintiff's union filed a Step 1 grievance on his behalf with BCC pursuant to its collective bargaining agreement (the "CBA") alleging that "BCC failed to follow procedures set forth in Article 21 when it terminated Plaintiff's substitute appointment." *Id.* Thereafter, on June 17, 2017, Plaintiff filed a Step 2 grievance pursuant to the CBA with the Chancellor of CUNY.

Having been unsuccessful at both Steps, Knights thereafter initiated an arbitration proceeding under the CBA to challenge the lawfulness of his termination.

As a result, CUNY brought on a motion before the designated arbitrator claiming that the arbitration was moot because on May 3, 2018, CUNY had sent a letter rescinding Knights' termination and notifying Knights that it would pay him "the amount of $3,855.26 as full and final payment for the remaining term of the extension of your substitute appointment, or thirteen (13) working days."

The arbitrator's Opinion, dated November 7, 2018, was introduced during the trial. *See* Pl.'s Ex. 29. In it, the arbitrator first recounted the "Background," which essentially tracked the Statement of Facts the Defendant subsequently submitted to the Court in its Memorandum of Law in support of its motion for summary judgment. The arbitrator did reference, however, another letter which the college had previously sent to the Plaintiff on September 28, 2017, entitled "Notice

of Immediate Discharge," which stated that "the College has determined to discharge you for just cause, effective immediately." *Id.* at 3.

The letter also advised Knights that he had the right to "appeal by proceeding to disciplinary arbitration" in accordance with provisions of the CBA. *Id.* at 2-3. Knights availed himself of that remedy, seeking "Immediate reinstatement with make whole relief." *id.* at 3, including expungement of the Title IX report that was in his file.

The arbitrator's Opinion then set forth the parties' respective positions. After briefly stating that CUNY was essentially basing its mootness argument on the fact that it had rescinded Knights' termination and had just let his employment lapse, she set forth the Plaintiff's contentions: (1) that the CBA "entitles him to a fact-finding hearing on the guilt or innocence on whether he violated CUNY's Sexual Misconduct Policy and whether termination was the appropriate remedy," *id.* at 5, and (2) "the fact that the College rescinded the penalty cannot take away this right" *id.*; moreover, "the College has not rescinded the adoption of the findings of the Title IX investigative report." The arbitrator further commented:

> Notwithstanding his rights under the parties' collective bargaining agreement, the Grievant maintains he is entitled to a fact-finding hearing based upon the due process protections contained in the fourteenth (14) amendment of the U.S. Constitution and/or a name clearing hearing. He cites the decision in *Cleveland Board of Education v, Loudermill.* Likewise, he cites Supreme Court jurisprudence under *Board of Regents*, and similar cases arguing he is entitled to a name clearing hearing, because the government entity's termination has

6

>imposed a stigma or disability that prevents him from taking advantage of other employment opportunities.

The arbitrator accepted CUNY's position that its rescission of Knights' termination and its decision not to renew Knights' employment after his substitute term had run its course had rendered his appeal moot. She also rejected Knights' request that the Title IX report be expunged because it "was never the subject of the original grievance," *id.* at 9, as well as Knights' contention that he was "entitled to a fact-finding hearing to clear his name based upon U.S. Supreme Court precedent." *Id.* In that regard, the arbitrator held that his argument was misplaced because as a temporary substitute employee he had "no constitutional property interest in his position." *Id.*

In addition to availing himself of his right to have the validity of his termination and the stigma associated with his termination without being afforded an opportunity to clear his name adjudicated in the arbitral forum, Knights also filed an Article 78 proceeding in New York Supreme Court. However, as recounted in the Defendant's memorandum of law, it was ultimately dismissed "for failure to exhaust administrative remedies because Plaintiff was also proceeding to arbitration with CUNY." Def. Mem. of Law, at 4.

Notably, if not for CUNY's successful effort to moot the arbitration, the validity of Knights' termination and the failure of CUNY to afford him a name-clearing hearing would have resulted in a final binding decision by the arbitrator.

*See* CBA § 21.8(b)(4) ("the disciplinary arbitrator's decision regarding the guilt and innocence and the sufficiency of grounds for the penalty shall be final and binding upon the parties.")

Having failed to obtain relief in his arbitration and Article 78 proceedings, Plaintiff then initiated the subject litigation.

## II

This case is different in a number of respects from *Farrar* and its progeny denying counsel fees. The substantive nature of the underlying bases for the nominal damages awards in all those cases were not of the same dimension as the constitutional violation in this case. Notably in *Pino* there was no constitutional violation at all. Here, the constitutional procedural due process violation – the failure of CUNY to afford the Plaintiff a name-clearing hearing – was profound.

The Supreme Court long ago held in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), after noting that "it is procedure that marks much of the difference between rule by law and rule by fiat," *id.*, at 436, that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437. It is, moreover, "a principle basic to our society." *Id.* (citation omitted). Thus, "[o]nly when the whole proceedings leading to the pinning of an unsavory label on a person are aired can oppressive results be prevented." *Id.*

Subsequently, in *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972), the Supreme Court held, as explained by the Second Circuit in *Brandt v. Board of Co-op, Educational Services*, 820 F.2d 41 (1987), that "[a] government employee's liberty interest is implicated where the government dismisses him based on charges 'that might seriously damage his standing and association in his community' or that might impose 'on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities.'" *Id.* at 43 (quoting *Roth*, 408 U.S. at 573). Thus, "where the employee's liberty interest is implicated, he is entitled under the due process clause to notice and an opportunity to be heard." *Id.*

The Second Circuit in *Brandt* recognized that in *Paul v. Davis*, 424 U.S. 693 (1976), the Supreme Court noted that under *Roth*, "it is not sufficient for a liberty claim 'that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment.'" *Brandt*, 820 F.2d at 45 (quoting *Paul*, 424 U.S. at 710). Brandt contended that this stigma plus standard had been met because of the presence of defamatory charges in his personnel file. The court agreed.

In my decision denying CUNY's motion for summary judgment, I made clear the difference between the deprivation of a property interest and a liberty interest. I drew a dichotomy between the two, explaining that as a substitute teacher Knights had no property interest under the due process clause, as the

9

arbitrator correctly ruled, but he certainly had alleged a liberty interest because the Title IX report allegedly remained in his personnel file. *See Knights*, 639 F. Supp. 3d at 403-04.

The arbitrator was wrong, therefore, in refusing to grant Knights a name-clearing hearing. But Knights is not to be faulted for her misunderstanding of the seminal Supreme Court law recognizing that even in the absence of a property interest, a liberty interest can nonetheless be implicated. Nor can Knights be faulted because CUNY sought to moot his arbitration by reinstating him with full back pay, thereby relegating him to seek to clear his name in this Section 1983 litigation. There can be no logical reason for doing that if CUNY truly believed that he rightfully was terminated. It can plausibly be argued that the rescission of Knights' termination was an admission against CUNY's contention that he was terminated for cause. *See, e.g.*, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013) (in employment cases, "weaknesses, implausibilities, inconsistencies, or contradictions" in employer's reason for termination is evidence against employer).

Commendably, Knights also sought to avail himself of an Article 78 proceeding rather than to initiate his federal litigation, but was denied that opportunity because of the pendency of the arbitration proceeding.

**III**

Thus, if not for CUNY's success in mooting the arbitration, Knights would have had the opportunity in his arbitration proceeding to clear his name and have the arbitrator determine whether his termination was warranted. Whether he would have been successful is problematical, but it is by no means certain that the arbitrator would have found that he was justifiably terminated. This was a classic "he said, she said" scenario and the outcome depended on the credibility of the antagonists. That the jury credited the student's testimony over Knights does not mean that the arbitrator would have ruled the same way, especially in light of CUNY's admission that he was entitled to be reinstated with full pay.

But it is also problematical whether the arbitrator was empowered under the CBA to award Knights more than back pay if she did indeed determine that he was wrongfully terminated. *See* CBA § 21.8(b)(4) (stating that the arbitrator's powers are limited to approving or disapproving penalties or imposing other penalties). And it is further problematical whether Knights could have invoked federal jurisdiction in this litigation for economic and consequential damages if the arbitrator had decided that he was, in any event, entitled to his sought-after name clearing hearing. The federal hook to his litigation was the failure to afford him this constitutional due process right. Without it there would have been no cognizable federal claim, and no basis to seek monetary relief in the federal courts.

11

It is even problematical whether Knights would have had a cause of action in state court. *See Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 304 (N.Y. 1983) (In New York, there is "no tort claim for wrongful discharge . . . of an at-will employee.").

Thus, the Court views this case as paradoxical and a farrago of problematic issues. But one thing is perfectly clear: Because CUNY mooted Knights' right to have the legitimacy of his termination decided in his arbitration proceeding, Knights certainly had no choice but to resort to judicial recourse to have the opportunity to clear his name.

## IV

In the final analysis the Court is ill at ease with CUNY's successful gambit to abort the arbitration — which would have resulted in a determination of whether Knights was terminated for cause — and relegate him to what it must have known would be protracted and costly litigation. The Court cannot comfortably give its judicial stamp of approval to such questionable behavior.

Nonetheless, Knights unsuccessfully sought significant monetary damages and deference should be paid to *Farrar* and its progeny for circumscribing the award of counsel fees when only nominal damages are extant.

But because of the importance of the right to have an opportunity to restore one's reputation, which is a "principle basic to our society," *Wisconsin v.*

*Constantineau*, 400 U.S. at 436, it is counterintuitive under the unique circumstances of this case to punish the Plaintiff's lawyer entirely because he had no choice other than to seek to clear his client's name in this litigation.

In determining the reasonableness of attorney's fees, the Court is normally required to utilize the lodestar method by "multiplying the number of hours reasonably expended by a reasonable hourly rate." *Farrar*, 506 U.S. at 115 (cleaned up). But in this case, there is no formulaic method for prescinding between the time spent by Knights' counsel for his success in prevailing on Knights' name-clearing claim and his failure to be vindicated. In this circumstance, therefore, the Court must use its sound discretion and may "simply reduce the award to account for the limited success." *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983).

Having witnessed counsel's highly professional performance and having been privy to the entire breadth of this litigation — spawned in the main by CUNY's decision to abort the arbitration — the Court is obviously in the best position to make this determination. It believes that an attorney's fee award of $75,000 is, under all the circumstances, appropriate.

## CONCLUSION

The motion for attorney's fees is accordingly DENIED in part and GRANTED in part. Judgment shall be entered in favor of Plaintiff Rogelio Knights, Jr. against Defendant City University of New York in the sum of $75,000.

**SO ORDERED.**

                                                                   /S/ Frederic Block  
                                                                    FREDERIC BLOCK  
                                                                    Senior United States District Judge

Brooklyn, New York  
October 3, 2023