UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROGELIO KNIGHTS, JR.

              Plaintiff,

     -against-

THE CITY UNIVERSITY OF NEW
YORK, THOMAS A. ISEKENEGBE,
and CHRISTOPHER TODD
CAROZZA,

             Defendants.

**AMENDED MEMORANDUM
AND ORDER**

Case No. 1: 19-CV-480 (FB) (RML)

*Appearances:*
*For the Plaintiff*:
ROOSEVELT SEYMOUR
147 Prince Street, Room 203
Brooklyn, NY 11201

*For the Defendants*:
SYLVIA O. HINDS-RADIX
CHRISTOPHER ARKO
Corporation Counsel for the
City of New York
100 Church Street, Room 2-140
New York, NY 10007

**BLOCK, Senior District Judge:**

     I write in response to the Court's remand "for the District Court to reconsider its award of fees in light of the relevant standards and considerations and, if it again finds that an award of fees is appropriate, to articulate its basis for such a finding." *Knights v. City Univ. of New York*, No. 23-7708-CV, 2024 WL 3912895, at *2 (2d Cir. Aug. 23, 2024).

     To be sure, as I wrote in my underlying decision awarding counsel fees, I

was "mindful of the Supreme Court's holding in *Farrar v. Hobby*, 506 U.S. 103 (1992), that '[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief . . . the only reasonable fee is usually no fee at all.'" *Knights v. City Univ. of New York*, 697 F. Supp. 3d 3, 4 (E.D.N.Y. 2023). And I was "also mindful of the Second Circuit's interpretation of *Farrar* in *Pino v. Locasio*, 101 F.3d 235 (2d Cir. 1996), where it held that 'while there is no *per se* rule that a plaintiff recovering nominal damages can never get a fee award, *Farrar* indicates that the award of fees in such a case will be rare.'" *Knights*, 697 F. Supp. 3d at 4 (citing *id.* at 238).

Moreover, I recognized that "in *Pino,* the Court cabined those rare circumstances justifying a fee award to those cases where a tangible result was achieved by the litigation that 'confers a benefit to society' such as the creation of 'a new rule of liability that served a significant public purpose.'" *Id.* And I cited Second Circuit precedent calling for "ground-breaking conclusions of law," or litigation which "resulted in the granting of injunctive relief" to warrant counsel fees. *Id.* (citing *Pino*, 101 F.3d at 239; *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 252 (2d Cir. 2004); and *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998)).

Why then did I award counsel fees in this case? Although I thought that my decision laid out the bases for my fee award, perhaps in retrospect it was not

sufficiently explicit.

Preliminarily, I do not read *Farrar* or *Pino* as being preclusive of unusual, *rare* situations where justice and fairness support an award of fees, especially where, as here, the litigation came about principally because of the defendant's bad acts. *See Pino*, 101 F.3d at 239 (there is "no *per se* rule that a plaintiff recovering nominal damages can never get a fee award").

I found one such example: Judge McMahon's decision in *Lee v. McCue,* No. 04-CIV-6077 CM, 2007 WL 2230100 (S.D.N.Y. 2007). There the plaintiff made no new law, but nonetheless "prevailed on a significant constitutional claim of false arrest . . . as well as on his state law claims of battery, false arrest, and false imprisonment." *Id.* at *7.  Although he sought $1.5 million in damages, the jury only awarded nominal damages.

In awarding counsel fees, Judge McMahon reasoned that "the plaintiff achieved a meaningful victory on a significant constitutional claim; moreover, Plaintiff's counsel was also compelled to defend against a patently meritless pre-trial motion . . . ." *Id.*

The *bona-fides* of a defendant's litigation strategy causing the plaintiff here to unnecessarily litigate a case which, if not for the defendant's bad acts, might never have happened, should not be countenanced.

Let me explain:

The following facts are largely taken from the arbitration decision rendered on November 7, 2018.  *See* Arbitration Op., ECF No. 15-2 (attached hereto for the Court's convenience).

Knights had been hired on September 6, 2016, by the defendant CUNY as a Substitute Higher Education Associate at Bronx Community College as Student Athletic Manager. His term was to expire on March 5, 2017, but his appointment had been extended until April 5, 2017. He was the subject of a Title IX investigation of sexual harassment of an adult student at LaGuardia College, and was summarily discharged, without a hearing, on March 17, 2017.  Exercising his rights under the CUNY collective bargaining agreement he promptly sought arbitration, seeking reinstatement and back pay.

Knights maintained that he was  "entitled to a fact-finding hearing based upon the due process protections contained in the fourteenth (14) amendment of the U.S. Constitution and/or a name clearing hearing," citing the Supreme Court decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), as well as *Board of Regents v. Roth*, 408 U.S. 564 (1972), and similar cases supportive of his entitlement to a name-clearing hearing "because the government entity's termination has imposed a stigma or disability that prevents him from taking advantage of other employment opportunities."  Arbitration Op. at 6.

Instead of giving him the opportunity to clear his name in a classic "he said,

she said" verbal situation, CUNY sought to moot the arbitration. It did so by rescinding his termination with back pay, letting his employment lapse, and then bringing a motion before the arbitrator to abort the arbitration as moot.

Its gambit was successful. The arbitrator held that because Knights was reinstated with back pay there was no justiciable dispute remaining. She held that "the Grievant' s contention he is entitled to a fact-finding hearing to clear his name based upon U.S. precedent is misplaced." She reasoned that "[w]ithout addressing any claim of stigma claimed by the Grievant, these cases apply to public employees with a property interest in their job," and that he did not have a constitutional property interest in his temporary job. *Id.* at 9.

The arbitrator was correct that Knights did not have a property interest in his employment but was dead wrong that he was not entitled to a name-clearing hearing. It is almost hornbook law that regardless of whether a property interest is extant, a terminated employee — regardless of whether he was a temporary or permanent employee — who claims that he has suffered a stigma because of his termination has a liberty interest entitling him to a name-clearing hearing. As the Second Circuit has made crystal clear, even if an at-will or temporary employee does not have a property interest in his continued employment, "a probationary employee can 'invoke the protections of the Due Process Clause' where that employee has suffered a loss of reputation 'coupled with the deprivation of a more

tangible interest, such as government employment.'"  *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (quoting *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)).

Surely, CUNY's counsel must have known the law, but counsel never conveyed that basic principle of constitutional law to the misguided arbitrator. Knights had to resort to protracted litigation for the next six years before the jury correctly decided that he was indeed entitled to a name-clearing hearing.

If Knights had received a timely name-clearing hearing before a CUNY decisionmaker, it would have rendered nugatory any prospective trial because he would have received all to which he was entitled.  *See Patterso*n, 370 F.3d at 328 ("The remedy for a stigma-plus violation of a government employee's constitutional due process rights is a name-clearing hearing where the employee is given the opportunity to clear his name.").

To be sure, Knights' lawsuit did not go well for him, and the jury ruled against him on the merits. However, it is understandable why he would seek monetary damages for the employment opportunities that his ubiquitous stigma allegedly caused him throughout the years. They included stigmatizing statements made by CUNY personnel to the *New York Daily News*, which ran an article on Knights on July 11, 2017.  *See* ECF No. 53-14 (attached hereto).  But, once again, it never would have gotten that far if he had been given a prompt opportunity to

clear his name.  That he understandably sought significant monetary damages was conceptually irrelevant, just as it was in *Lee*.

I thus believe that CUNY had acted in bad faith in successfully employing its mootness gambit to abort the arbitration and Knights' entitlement to his name-clearing hearing by reinstating him with back pay, thereby precluding him from his constitutional right to tell his side of this "he said, she said" story.  I simply could not in good conscience condone CUNY's manipulative behavior and penalize Knights' attorney for engaging in six years of unnecessary litigation without any compensation.

I therefore consider the unique facts of this case to be tantamount to a rare example of when counsel fees are justified for a constitutional violation, even if no new rule of law resulted from the litigation. Moreover, I do not view depriving one of his constitutional entitlement to a name-clearing hearing as inconsequential. The Supreme Court has made it perfectly clear that this liberty interest is a fundamental right, not to be trampled on. Once again, as it stated in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437.

As for the size of the fee award, Knights requested $119,700 but he had omitted from his request "hours spent in consultation with witnesses, email

exchanges with defendant's counsel, and other non-substantive administrative work." *See* Seymour Decl., ECF No. 89 at 2. More importantly, he "eliminated time spent on plaintiff's failed cross-motion for summary judgment on his property interest claim." *Id*. Thus, his fee request was limited to his successful liberty interest claim, namely the deprivation of his entitlement to a name-clearing hearing. Nonetheless, I did not give him what he requested for the prosecution of his liberty interest claim because his effort to monetize the consequential damages his client suffered from not having a hearing was unsuccessful.

I also reviewed the Schedule of Legal Services Mr. Seymour performed since 12/10/18, attached to his Declaration, and found them to be most reasonable for the protracted litigation caused by defendant's bad acts. *See* Ex. 2 to Seymour Decl., ECF No. 89-1 at 5-9. Moreover, I was impressed with the fact that although Mr. Seymour was a skilled federal civil rights litigator, "specializing in employment and labor issues", Seymour Decl. at 1, his hourly rate was only $350, even though the accepted average hourly rate for such litigation by someone of Mr. Seymour's stature in the Eastern District is $450. *See Holloway v. City of New York*, No. 21-CV-3858 (AMD) (CLP), 2024 WL 4333761, at *8 (E.D.N.Y. Sept. 27, 2024); *Lilly v. City of New York*, 934 F.3d 222, 231 (2d Cir. 2019). And finally, I was impressed with Mr. Seymour's consummate professionalism and skillful presentation of his client's case.

I trust that I have explained my decision with sufficient clarity to allow the Court to make its final ruling. Therefore, I once again order that judgment be entered in the sum of $75,000 in favor of Plaintiff Rogelio Knights, Jr. against Defendant City University of New York.[1]

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 3, 2024

---

[1] As stated in my prior decision, "there is no formulaic method for prescinding between the time spent by Knights' counsel for his success in prevailing on Knights' name-clearing claim and his failure to be vindicated. In this circumstance, therefore, the Court must use its sound discretion and may 'simply reduce the award to account for the limited success.'" *Knights v. City Univ. of New York*, 697 F. Supp. 3d 3, at 9 (E.D.N.Y. 2023) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)).