UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROGELIO KNIGHTS, JR.,

                    Plaintiff,

    -against-

THE CITY UNIVERSITY OF NEW
YORK, THOMAS A. ISEKENEGBE,
and CHRISTOPHER TODD
CAROZZA,

                Defendants.

**MEMORANDUM AND ORDER**
Case No. 1:19-CV-480

---

*Appearances:*
*For the Plaintiff:*
ROOSEVELT SEYMOUR
147 Prince Street, Room 203
Brooklyn, NY 11201

*For the Defendant:*
SYLVIA O. HINDS-RADIX
CHRISTOPHER ARKO
Corporation Counsel for the City of New York
100 Church Street, Room 2-140
New York, NY 10007

**BLOCK, Senior District Judge:**

      The Court of Appeals has held in a Summary Order issued on June 16, 2025, that Knights was not entitled to attorney's fees. Accordingly, it vacated my judgment and remanded "with instructions to deny Knight's application for attorney's fees." *Knights v. City Univ. of New York*, No. 24-2887-CV, 2025 WL 1682069, at *3 (2d Cir. June 16, 2025) (summary order). The Mandate was issued on July 14, and, in compliance with my duty to abide by the appellate court's order, I am issuing this order today denying attorney's fees. But I take this opportunity to

write that the Court should, if faced with the issue again, reconsider the probity of the precedent upon which it relied in deciding that Knights' counsel was not entitled to one penny for successfully upholding a fundamental principle of constitutional law.

Although it is a rare occasion when I veer from the straight and narrow, I subscribe to Judge Posner's belief that judges, nonetheless, should call attention to a precedent's "infirmities, [and] its increasingly wobbly, moth-eaten foundations," even though it is duty bound to follow that precedent. *See, e.g.*, *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (quoting 93 F.3d 1358, 1363 (7th Cir. 1996)). Indeed, "[f]ederal judges have an obligation to speak out with regard to the administration of our nation's justice system." *Allapattah Servs., Inc. v. Exxon Corp.*, 362 F.3d 739, 746 n.7 (11th Cir. 2004) (Tjoflat, J., dissenting).[1]

And I concur in Justice Kavanaugh's recent prescient observation: "When determining how broadly or narrowly to read a precedent; when determining whether to extend, limit, or narrow a precedent; or in relatively infrequent cases, when determining whether to overrule a precedent, a court often will consider how

---

[1] *See, e.g.*, Frederic Block, *Disrobed: An Inside Look at the Life and Work of a Federal Trial Judge* 1 (2012) (discussing the two schools of thought as to the "extent judges should talk publicly about what they do"); *see also id.* at 1–3 (explaining perspectives of each school of thought).

the precedent squares with the Constitution's text and history." *United States v. Rahimi*, 602 U.S. 680, 729–30 (2024) (Kavanaugh, J., concurring).

Thus, I write to explain why the precedent relied upon by the Second Circuit is not a good fit for Knights' case and should be revisited.

## I.

That precedent was the Supreme Court's decision in *Farrar v. Hobby*, 506 U.S. 103 (1992) and the Second Circuit's decision in *Pino v. Locascio*, 101 F.3d 235 (2d Cir. 1996). Thus, in denying counsel fees for Knights' attorney, the Second Circuit wrote:

> In *Pino*, we applied the principles set forth in *Farrar*, explaining that "attorney's fees and costs are usually not appropriate when a plaintiff recovers only nominal damages." 101 F.3d at 239. We emphasized that a fee award in such a case will be "rare," such as when the plaintiff "prevail[s] on a novel issue of law" and thereby "create[s] a new rule of liability that serve[s] a significant public purpose."

*Knights*, 2025 WL 1682069, at *2. In *Farrar*, although the Supreme Court announced that an award of nominal damages suffices to constitute a plaintiff a prevailing party, thereby making him eligible for an award of counsel fees, it viewed his due process victory under the circumstances in that case as "technical" in nature, warranting the denial of any fee at all. *See* 506 U.S. at 114–15.

Justice O'Connor forcefully drove home the point in her concurring opinion. She began by stating that "[i]f ever there was a plaintiff who deserved no attorney's fees at all, that plaintiff is Joseph Farrar." *Id.* at 115 (O'Connor, J., concurring). His

3

victory, therefore, "[was] simply not the type of victory that merit[ed] an award of attorney's fees." *Id.* Thus, "when a plaintiff's victory is purely technical or *de minimis*, a district court need not go through the usual complexities involved in calculating attorney's fees." *Id.* at 117. Therefore, Justice O'Connor agreed that no counsel fees were warranted. *Id.* at 118.

Justice O'Connor did acknowledge, however, that the plaintiff's success "might be considered material if it also accomplished some public goal," *id.* at 121, but concluded that "[i]n this case, the relevant indicia of success—the extent of relief, the significance of the legal issue on which plaintiff prevailed, and the public purpose served—all point to a single conclusion," that "the appropriate fee in such a case is no fee at all," *id* at 122.

In *Pino*, the Second Circuit stated for openers that "[i]f this is not a case in which *Farrar* precludes a fee award it is hard to construct one." 101 F.3d at 238. The violation in that case was not even of constitutional proportions. Rather, it only entailed a statutory Title VII civil rights suit.[2] Nonetheless, the Court held that attorney's fees would have been appropriate if "the plaintiff [had] prevailed on a novel issue of law" or "created a new rule of liability that served a significant public purpose." *Id*. at 239 (citing *Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (2d Cir. 1994),

---

[2] The lack of a constitutional violation in *Pino* leaves open the question of whether a constitutional violation is necessary to award attorney's fees.

4

*cert. denied*, 513 U.S. 876 (1994)). In conclusion it observed that "[t]he vast majority of civil rights litigation does not result in ground-breaking conclusions of law, and therefore, will only be appropriate candidates for fee awards if a plaintiff recovers some significant measure of damages or other meaningful relief." *Id. Pino* was clearly not that case.

*Carey v. Piphus* was the seminal case that triggered the obligation of the trial court to require a jury in a § 1983 litigation to award nominal damages for the deprivation of one's right to procedural due process even in the absence of actual compensable injury. 435 U.S. 247 (1978). As the Supreme Court held: "Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, . . . we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Id.* at 266 (citations modified).

Consequently, district judges are required to charge the jury that it must signify on its verdict sheet whether this "absolute" right had been violated, and, if so, it must acknowledge the significance of this bedrock principle of constitutional law by awarding nominal damages. The failure to do so constitutes "plain error." *Robinson v. Cattaraugus Cnty.*, 147 F.3d 153, 162 (2d Cir. 1998).

5

## II.

In denying counsel fees for Knights' attorney, the Court of Appeals relied on its circumscribed holding in *Pino* as the applicable precedent, which it believed was dictated by *Farrar. See Knights*, 2025 WL 1682069, at *2. But *Pino* only entailed an unremarkable Title VII statutory violation, and Farrar's success for his constitutional due process violation was only "technical." By contrast, Knights was deprived of his fundamental constitutional right to a name-clearing hearing.

I thought I made that point crystal clear in the two decisions in *Knights* that wound up in the Second Circuit Court of Appeals. *See Knights v. City Univ. of New York*, 697 F. Supp. 3d 3 (E.D.N.Y. 2023), *vacated and remanded*, No. 23-7708-CV, 2024 WL 3912895 (2d Cir. Aug. 23, 2024) ("*Knights I*"); *Knights v. City Univ. of New York*, 753 F. Supp. 3d 140 (E.D.N.Y. 2024), *vacated and remanded*, No. 24-2887-CV, 2025 WL 1682069 (2d Cir. June 16, 2025) ("*Knights II*").

In *Knights I*, I explained why this case was fundamentally different than *Farrar* and *Pino*, and quoted extensively from the Supreme Court's landmark decisions in *Wisconsin v. Constantineau* and *Board of Regents v. Roth*:

> The Supreme Court long ago held in *Wisconsin v Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed2d 515 (1971), after noting that "it is procedure that marks much of the difference between rule by law and rule by fiat," *id.,* at 436 , 91 S.Ct. 507, that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437, 91 S.Ct. 507. It is moreover, "a principle basic to our society." *Id.* (citation omitted). Thus,

"[o]nly when the whole proceedings leading to the pinning of an unsavory label on a person are aired can oppressive results be prevented." *Id*.

Subsequently, in *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court held, as explained by the Second Circuit in *Brandt v. Board of Co-op, Educational Services,* 820 F.2d 41 (2d Cir. 1987), that "[a] government employee's liberty interest is implicated where the government dismisses him based on charges 'that might seriously damage his standing and association in his community' or that might impose 'on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities.'" *Id.* at 43 (quoting *Roth,* 408 U.S. at 573, 92 S.Ct. 2701). Thus, "where the employee's liberty interest is implicated, he is entitled under the due process clause to notice and an opportunity to be heard." *Id*.

*Knights I*, 697 F. Supp. 3d at 7 (E.D.N.Y. 2023). Consequently, I awarded a $75,000 fee. *Id.* at 9. On appeal, the Circuit Court remanded in a Summary Order for me "to adequately explain" why I awarded that fee in light of "the long line of [] cases that provide guidance on the propriety of fee awards, particularly in nominal-damages cases," citing, *inter alia, Farrar* and *Pino. Knights*, 2024 WL 3912895 at *2.

In *Knights II*, I acknowledged that in *Pino* "the Court cabined those rare circumstances justifying a fee award to those cases where a tangible result was achieved by the litigation that 'confers a benefit to society' such as the creation of a 'new rule of liability that served a significant public purpose.'" 753 F. Supp. 3d at 142 (quoting *Knights I*, 697 F. Supp. 3d at 4). And I also "cited Second Circuit precedent calling for 'ground-breaking conclusions of law,' or litigation which 'resulted in the granting of injunctive relief' to warrant counsel fees." *Id*

7

I concluded, nonetheless that "counsel fees are justified for a constitutional violation, even if no new rule of law resulted from the litigation[,]" since "I d[id] not view depriving one of his constitutional entitlement to a name-clearing hearing as inconsequential." *Id.* at 144. And I once again quoted *Wisconsin v. Constantineau*'s holding that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 144 (quoting 400 U.S. 433, 437 (1971)).

I also explained how the $75,000 fee award "was limited" to Knights' "successful liberty interest claim, namely the deprivation of his entitlement to a name-clearing hearing." *Id.* But I added that I believed that the defendant had acted in bad faith in not affording Knights his hearing during the past decade. In that respect, the Circuit Court took issue with that assessment of the defendant's conduct, commenting that it was "not aware of any basis for concluding that CUNY proceeded with deliberate intent to violate Knights' constitutional rights." *Knights*, 2025 WL 1682069, at *3. Consequently**,** it ruled that Knights was not entitled to any attorney's fees. *Id.*

 But whether CUNY acted in bad faith or good faith was, of course, an irrelevancy. All that mattered was that "[t]he jury obviously concluded that CUNY . . . deprived Knights of a name-clearing hearing to which he was entitled." *Id.*

## III.

Unlike the times when *Farrar* and *Pino* were decided three decades ago, we live today at a time when federal judges throughout the country are railing against the unprecedented assault on our Constitution. And the right to be heard before being deprived of one's liberty is at center stage in the press and before the courts.

Surely, the Supreme Court would recognize, if given the opportunity, that the fundamental constitutional deprivation that Knights had been subjected to was hardly of a "technical" nature. And the Second Circuit should surely revisit its antiquated precedent in *Pino*, which does not embrace the importance of fighting for the preservation of bedrock, fundamental principles of constitutional law. Why Knights' attorney should be penalized by not awarding any fees at all for his successful decades-long battle to give his client the basic due process liberty right to be heard is simply beyond my comprehension.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 21, 2025

9